COURT OF APPEALS
DECISION
DATED AND FILED

April 1, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1379**

Cir. Ct. No. **2022CV6763**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

MILLER COMPRESSING COMPANY,

PLAINTIFF-APPELLANT,

V.

JOHN E. BUSBY AND GEORGE A. DIONISOPOULOS, AS TRUSTEE OF SFM
MARITAL TRUST,

DEFENDANTS-RESPONDENTS.

---

APPEAL from orders of the circuit court for Milwaukee County: WILLIAM SOSNAY, Judge. *Affirmed*.

Before White, C.J., Geenen and Colón, JJ.

¶1 GEENEN, J. Miller Compressing Company ("Miller Compressing") alleges that between 2012 and 2016, non-party MCC Holding LLC ("MCC Holding") fraudulently transferred money to John E. Busby, individually, and George A. Dionisopoulos, as trustee of the SFM Marital Trust, (collectively,

"Defendants"),[1] in order to avoid paying a debt it owed to Miller Compressing. Transfers made "[w]ith actual intent to hinder, delay or defraud any creditor" are "fraudulent" under the Uniform Fraudulent Transfer Act ("UFTA"), WIS. STAT. § 242.04(1)(a) (2021-22),[2] in effect at the time of the transfers and when the lawsuit was commenced.[3] Miller Compressing sued Defendants under the UFTA requesting, among other relief, that the circuit court void the transfers.

¶2      Miller Compressing appeals from two orders of the circuit court. The first order granted Defendants' motion to dismiss Miller Compressing's Amended Complaint because Miller Compressing's fraudulent transfer claims under WIS. STAT. § 242.04(1)(a) were not pleaded with particularity and did not satisfy the heightened pleading requirements for fraud claims under WIS. STAT. § 802.03(2). The second order denied Miller Compressing's postjudgment motion for leave to amend the complaint or, in the alternative, to conduct limited discovery.

¶3      We conclude that Miller Compressing's statutory claims are subject to the heightened pleading requirement and must be pleaded with particularity under WIS. STAT. § 802.03(2) because the claims allege an actual intent to "defraud" a creditor under WIS. STAT. § 242.04(1)(a). Although the degree of particularity with which these claims must be pleaded may be relaxed under appropriate

---

[1] John Busby was the president of MCC Holding at the time of the transfers, and the SFM Marital Trust was an insider and equity member of MCC Holding.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[3] While the case was pending before this court, the UFTA was amended by 2023 Wis. Act 246. That enactment renamed WIS. STAT. ch. 242; it is now titled the Uniform Voidable Transactions Law ("UVTL").

circumstances,[4] we conclude that Miller Compressing's Amended Complaint did not satisfy the heightened pleading requirement.

¶4      With respect to Miller Compressing's postjudgment motion for leave to amend the complaint, the circuit court correctly acknowledged that parties normally enjoy a presumption in favor of amending their pleadings under WIS. STAT. § 802.09(1).  However, relying on *Mach v. Allison*, 2003 WI App 11, 259 Wis. 2d 686, 656 N.W.2d 766, the circuit court concluded that parties lose this presumption after judgment has been entered even if the judgment is without prejudice and not on the merits, and the party seeking postjudgment amendment to pleadings must present a reason for granting the motion that is sufficient to overcome the value in the finality of the judgment.  The circuit court concluded that Miller Compressing failed to present such a reason.

¶5      We conclude that the circuit court correctly determined that Miller Compressing was not entitled to a presumption in favor of amending its complaint under WIS. STAT. § 802.09(1) because the motion was made after judgment was entered.  Whether judgment was with or without prejudice is a relevant consideration in the balancing test established in *Mach*.  However, in this case, Miller Compressing failed to present a reason sufficient to overcome the value in the finality of the judgment.  Accordingly, the circuit court did not erroneously exercise its discretion when it denied Miller Compressing's motion.  We affirm.

---

[4] As we explain in greater detail below, the particularity requirement may be relaxed when certain facts necessary to state a fraudulent transfer claim are peculiarly within the defendant's knowledge.  In such a circumstance, allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is found.

## BACKGROUND

¶6     In 2005, Miller Compressing entered into a settlement agreement with Jeffrey Miller that required Miller Compressing to pay Miller $350,000 per year from 2005 through 2024 ("Annual Payments").  In 2012, MCC Holding sold its interest in Miller Compressing.  As a part of the sale transaction, MCC Holding sold its stock in Miller Compressing to a third-party buyer, and MCC Holding agreed to assume Miller Compressing's responsibility for making the Annual Payments. After the sale, MCC Holding made the Annual Payments through 2020.

¶7     When the 2021 Annual Payment became due, MCC Holding informed Miller that it was not making any further Annual Payments due to lack of funds. Because MCC Holding could not or would not make the Annual Payment, Miller Compressing made the 2021 Annual Payment directly to Miller.

¶8     Miller Compressing requested information from MCC Holding regarding its claimed lack of funds.  MCC Holding provided Miller Compressing with some financial records in response to the request.  From those records, Miller Compressing learned that MCC Holding transferred substantial amounts of money to Defendants after the 2012 sale transaction.  Between 2012 and 2016, MCC Holding transferred over $4,000,000 to Defendants.

¶9     MCC Holding and Miller Compressing offered different views of the transfers.  MCC Holding contended that the financial records demonstrate that the transfers were justified as repayment for legitimate, bona fide obligations of MCC Holding.  Miller Compressing, however, claimed that the facts and circumstances surrounding the transfers suggested that they were not made to repay bona fide obligations and instead were fraudulent.

¶10    In October 2022, Miller Compressing filed its original complaint; soon after, it amended the complaint to name Dionisopoulos, the trustee of the SFM Marital Trust, but the substantive allegations remained unchanged ("Amended Complaint"). In its suit, Miller Compressing alleged that certain transfers from MCC Holding to Defendants between 2012 and 2016 were "fraudulent" under WIS. STAT. § 242.04(1)(a), and requested that the circuit court void the transfers and impose a constructive trust on the transferred assets.[5] Miller Compressing also made a claim for equitable accounting, and it requested an injunction preventing future fraudulent transfers.

¶11    Defendants moved to dismiss the Amended Complaint arguing that Miller Compressing's fraudulent transfer claims under WIS. STAT. § 242.04(1)(a) were not pleaded with particularity and did not satisfy the heightened pleading requirements for fraud claims under WIS. STAT. § 802.03(2). In response, Miller Compressing argued that § 802.03(2) did not apply to its statutory claims, and even if it did, the Amended Complaint pleaded the claims with sufficient particularity. The circuit court agreed with Defendants, applied § 802.03(2) to Miller Compressing's statutory claims, and concluded that the fraudulent transfer claims were not pleaded with particularity. The circuit court determined that the equitable accounting claim could be dismissed because Miller Compressing already knew the amount owed to it by MCC Holding and the total amount of the allegedly fraudulent transfers. The circuit court rejected Miller Compressing's claim for injunctive relief, concluding that it failed to show a reasonable likelihood of success on the

---

[5] Miller Compressing also alleged constructive fraudulent transfer claims under WIS. STAT. § 242.04(1)(b), but because it voluntarily dismissed those claims, they are not a subject of this appeal.

merits and that Miller Compressing has an adequate remedy at law. The circuit court dismissed the Amended Complaint without prejudice.

¶12    After judgment was entered, Miller Compressing moved for leave to amend its complaint or, in the alternative, for limited discovery, and it attached a proposed Second Amended Complaint to its motion. The proposed Second Amended Complaint added MCC Holding as a defendant, added a claim for breach of contract against MCC Holding, and added numerous allegations and details about the allegedly fraudulent transfers.

¶13    The circuit court denied Miller Compressing's motion for leave to amend. The circuit court acknowledged that parties normally enjoy a presumption in favor of amending their pleadings, but relying on *Mach*, 259 Wis. 2d 686, ¶27, the circuit court concluded that parties lose this presumption after judgment has been entered, even if that judgment is entered without prejudice. The circuit court then analyzed whether Miller Compressing presented a sufficient reason to overcome the value in the finality of the judgment and concluded that it had not, observing that the additional details included in the Second Amended Complaint were known to Miller Compressing before it filed the original complaint, and that Miller Compressing should have attached the proposed Second Amended Complaint when it was opposing the Defendants' motion to dismiss (i.e., before judgment was entered). The circuit court also analyzed whether the proposed Second Amended Complaint would be futile, that is, whether it could survive a

motion to dismiss, and it concluded that the proposed Second Amended Complaint would be futile for reasons related to proper venue.[6]

¶14 Miller Compressing appealed the order of the circuit court granting Defendants' motion to dismiss and the order denying its postjudgment motion for leave to amend its complaint. While the case was pending before this court, the UFTA was amended by 2023 Wis. Act 246 (the "Act"). That enactment renamed WIS. STAT. ch. 242; it is now titled the Uniform Voidable Transactions Law ("UVTL"). Among other changes, the UVTL replaced the term "fraudulent" with "voidable" throughout ch. 242. Under the UVTL, asset transfers are "voidable," not "fraudulent," if they are made "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." WIS. STAT. § 242.04(1)(a) (2023-24).

¶15 In light of the amendments to WIS. STAT. ch. 242, we asked the parties to address the following questions in supplemental briefs: (1) whether the changes made to the UFTA/UVTL by the Act are non-substantive; (2) whether or what retroactivity concerns must be considered by the court; and (3) if this court determines that the extraordinary pleading requirements for fraud do not generally

---

[6] It is not clear in the transcript of the circuit court's oral ruling denying Miller Compressing's motion for leave to amend whether it believed that the proposed Second Amended Complaint would be futile because the fraudulent transfer claims were not pleaded with particularity. We note, however, that the circuit court repeatedly emphasized that the analysis would have been different if the motion had come before it granted Defendants' motion to dismiss and entered judgment. It also stated that, "while not getting into the merits of the second amended complaint," it might nonetheless be futile, supporting the inference that the circuit court did not base the "futility" part of its analysis on whether the fraudulent transfer claims were sufficiently pleaded in the proposed Second Amended Complaint.

We affirm the circuit court's order because Miller Compressing failed to provide a reason for granting its postjudgment motion sufficient to overcome the value in the finality of the judgment. Accordingly, we do not discuss whether the proposed Second Amended Complaint was adequately pleaded.

apply to claims under the UVTL, whether such requirements apply to Miller Compressing's claims.

## DISCUSSION

¶16 Miller Compressing appeals both the order granting Defendants' motion to dismiss the Amended Complaint and the order denying its post-judgment motion for leave to amend. We review each order in turn.

### I. The circuit court properly granted Defendants' motion to dismiss the Amended Complaint.

¶17 We begin with the circuit court order granting Defendants' motion to dismiss. We independently review a circuit court order granting a motion to dismiss. *State ex rel. Lawton v. Town of Barton*, 2005 WI App 16, ¶9, 278 Wis. 2d 388, 692 N.W.2d 304. Our review requires us to determine if Miller Compressing's fraudulent transfer claims under WIS. STAT. § 242.04(1)(a) are required by WIS. STAT. § 802.03(2) to be pleaded with particularity. This is a question of statutory interpretation that we also review independently. *Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852.

¶18 Many of the cases discussed in this opinion and by the parties in their briefs interpret Federal Rule of Civil Procedure 9(b), the federal analogue to WIS. STAT. § 802.03(2), as applied to fraudulent transfer claims under a state's UFTA. When a state rule mirrors a federal rule, we may consider federal cases interpreting the rule to be persuasive authority. *Luckett v. Bodner*, 2009 WI 68, ¶29, 318 Wis. 2d 423, 769 N.W.2d 504.

### a. WISCONSIN STAT. § 802.03(2) applies to Miller Compressing's statutory claims because they allege actual intent to defraud a creditor.

¶19    Miller Compressing argues that the circuit court erred when it concluded that WIS. STAT. § 802.03(2) applied to its statutory fraudulent transfer claims under WIS. STAT. § 242.04(1)(a).  Under that section, a transfer is fraudulent if it is made "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor[.]" WIS. STAT. § 242.04(1)(a).  In this case, Miller Compressing alleges that MCC Holding made the transfers with actual intent to "defraud" a creditor. Therefore, we confine our analysis to whether this subset of § 242.04(1)(a) claims that allege actual intent to "defraud" a creditor must be pleaded with particularity under § 802.03(2).[7]

¶20    We conclude that these claims are subject to WIS. STAT. § 802.03(2) and must be pleaded with particularity.  However, when certain facts are peculiarly within the defendant's knowledge, the heightened pleading standard may be relaxed and allegations based on information and belief may suffice, so long as the

---

[7] Other sections of WIS. STAT. ch. 242 treat certain transfers as constructively fraudulent based on the circumstances of the transfer and do not require actual intent to hinder, delay, or defraud a creditor. *See, e.g.*, WIS. STAT. §§ 242.04(1)(b), 242.05 (2021-22); **Beck v. BidRX, LLC**, 2018 WI App 61, ¶12, 384 Wis. 2d 207, 918 N.W.2d 96; *see also* **Mejia v. Reed**, 74 P.3d 166, 168-69 (Cal. 2003) (describing the difference between actual and constructive fraudulent transfers in California's version of the UFTA); **Beck**, 384 Wis. 2d 207, ¶11 (explaining that the UFTA provides "an explicit invitation for us to consider the way other jurisdictions have interpreted this same language").

Although Miller Compressing originally brought both actual fraudulent transfer claims under WIS. STAT. § 242.04(1)(a) and constructive fraudulent transfer claims under § 242.04(1)(b), Miller Compressing voluntarily dismissed its § 242.04(1)(b) claims.  We therefore confine our analysis to the pleading requirements applicable to actual fraudulent transfer claims under § 242.04(1)(a), and in particular, those that specifically allege that the transfers were made with actual intent to "defraud" a creditor.

allegations are accompanied by a statement of facts upon which the belief is founded.

¶21   We begin with the statutory language. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "We assume that the legislature's intent is expressed in the statutory language." *Id.*, ¶44. Statutory language is given its common, ordinary, and accepted meaning, and if the meaning of the statute is plain, we ordinarily stop the inquiry. *Id.*, ¶45.

¶22   WISCONSIN STAT. § 802.03(2) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." At the time of the transfers and when the lawsuit was commenced, WIS. STAT. § 242.04(1)(a) stated: "A transfer made or obligations incurred by a debtor is fraudulent as to a creditor ... if the debtor made the transfer or incurred the obligation … [w]ith actual intent to hinder, delay or defraud any creditor of the debtor[.]"

¶23   "Defraud" is not defined in the UFTA, nor does the statute explain how it differs from the other types of potentially fraudulent transfers under WIS. STAT. § 242.04(1)(a) (i.e., those made with actual intent to "hinder" or "delay" any creditor). The common dictionary definition of "defraud" is essentially the same as that of Black's Law Dictionary, both of which reference deceit and fraud. *Defraud*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary /defraud (last visited March 25, 2025) (defining "defraud" as "to deprive of something by deception or fraud"); *Defraud*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "defraud" as "[t]o cause injury or loss to (a person or organization) by deceit; to trick (a person or organization) in order to get money. *See* FRAUD");

*see **Kalal***, 271 Wis. 2d 633, ¶¶53-54 (referencing common dictionary definition of "refuse" in interpreting WIS. STAT. § 968.02(3)); ***Jamerson v. DCF***, 2012 WI App 32, ¶20, 340 Wis. 2d 215, 813 N.W.2d 221, *aff'd*, 2013 WI 7, 345 Wis. 2d 205, 824 N.W.2d 822 (referencing the Black's Law Dictionary definition of "fraud" in interpreting WIS. STAT. §§ 48.685(5)(br)5., 49.127(2m)).

¶24 The Amended Complaint says that Busby, then-president of MCC Holding, caused MCC Holding to transfer money to Defendants under the guise of repaying legitimate obligations owed to Defendants, but actually made the transfers with the intent to deprive Miller Compressing of what it was owed. Taken together, Miller Compressing alleges that MCC Holding intentionally made certain financial transfers it knew would put it in a position where it could not make the Annual Payments and, in doing so, acted with the actual intent to avoid paying its owed obligations. In our view, these are allegations that MCC Holding made the transfers "[w]ith actual intent to ... defraud" Miller Compressing. When a claim under WIS. STAT. § 242.04(1)(a) alleges that a debtor made transfers with an actual intent to "defraud" a creditor, like Miller Compressing's claim here, it must fall within the

purview of WIS. STAT. § 802.03(2) because it is, by definition, an "averment[] of fraud."[8]

¶25    Moreover, we are not persuaded that the Amended Complaint's occasional use of the words "hinder" and "delay" changes the result. As used in the Amended Complaint, these terms are no more than legal conclusions that are of no help in defending against a motion to dismiss. We accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom, but we are not bound to accept as true a legal conclusion couched as a factual allegation. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693. Here, the Amended Complaint's use of the statutory magic words does not transform what the alleged facts purport to show—that the transfers were made with actual intent to "defraud" Miller Compressing and were not justified by legitimate, bona fide obligations of MCC Holding.

¶26    Miller Compressing argues that its claims under WIS. STAT. § 242.04(1)(a) are not subject to the heightened pleading requirement because

---

[8] We observe that our conclusion would not change even if the UVTL applied to the transfers. Under the UVTL, transfers made with actual intent to "hinder, delay or defraud any creditor" are now deemed "voidable" rather than "fraudulent." WIS. STAT. § 242.04(1)(a) (2023-24). This, however, does not help Miller Compressing in the instant case because its claims are still based on MCC Holding's alleged actual intent to "defraud" a creditor. That is, even if the UVTL's use of "voidable" instead of "fraudulent" affects how other claims under § 242.04(1)(a) are pleaded (i.e., those based on actual intent to "hinder" or "delay" any creditor), claims alleging that transfers were made with actual intent to "defraud" a creditor are still, by definition, averments of fraud. This result is consistent with the Uniform Law Commission's commentary on the UVTL and the UFTA. "Fraud is not, and never has been, a necessary element of a claim under the Act" because, by its terms, the statute "applies to a transaction that 'hinders' or 'delays' a creditor, even if it does not 'defraud' the creditor." UNIF. VOIDABLE TRANSACTIONS ACT, §§ 4 cmt. 8 & 15 cmt. 1 (UNIF. L. COMM'N 2014). That is, although fraud is not a *necessary* element for a claim under § 242.04(1)(a), it *can be* an element when it is expressly alleged by the plaintiff as the basis for voiding a challenged transfer as Miller Compressing did in this case. Accordingly, because the result would be the same, we do not decide whether the UVTL has retroactive application in this case.

"intent ... may be averred generally" under WIS. STAT. § 802.03(2), and its claims under § 242.04(1)(a) require that the challenged transfers be made with "actual intent to ... defraud" a creditor. We are not convinced.

¶27 It is true that intent "and other condition of mind of a person may be averred generally," WIS. STAT. § 802.03, but this means only that plaintiffs can generally allege the existence of the requisite state of mind of the debtor. As the plain language of § 802.03(2) makes clear, "the circumstances constituting fraud" must be pleaded with particularity even though the "condition of mind" necessary for the claim may be pleaded generally. When claims under WIS. STAT. § 242.04(1)(a) are based on actual intent to "defraud" a creditor, as they are in this case, plaintiffs must plead facts showing how the circumstances of the transfer caused them to be defrauded, and these facts will necessarily be averments of fraud that must be pleaded with particularity under § 802.03(2).

¶28 To the extent WIS. STAT. § 802.03(2) is ambiguous with respect to its application to WIS. STAT. § 242.04(1)(a) claims based on "actual intent to ... defraud" a creditor, we are persuaded that the underlying purpose of the heightened pleading statute is best supported by applying the statute to Miller Compressing's claims because those claims expressly allege fraud. *Kalal*, 271 Wis. 2d 633, ¶¶47-48 (explaining that "a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses" and that "[i]f a statute is ambiguous, the reviewing court turns to the scope, history, context, and purpose of that statute" (citations omitted)).

¶29 The heightened pleading requirement for averments of fraud in WIS. STAT. § 802.03(2) "is designed to protect defendants whose reputation could be harmed by lightly made charges of wrongdoing involving moral turpitude, to

13

minimize strike suits, and to discourage the filing of suits in the hope of turning up relevant information during discovery." *Friends of Kenwood v. Green*, 2000 WI App 217, ¶14, 239 Wis. 2d 78, 619 N.W.2d 271 (cleaned up). The Amended Complaint alleges that Busby caused MCC Holding to transfer money to Defendants under the guise of paying legitimate obligations when, in reality, they were made for the purpose of depriving Miller Compressing of what it was owed, namely, MCC Holding's assumption of responsibility for making the Annual Payments. These allegations constitute the type of "wrongdoing involving moral turpitude" contemplated by § 802.03(2).

¶30     Miller Compressing relies on three Wisconsin Supreme Court cases to support its argument that WIS. STAT. § 802.03(2) does not apply to its claims under WIS. STAT. § 242.04(1)(a). Each case, however, is materially distinguishable from the facts here. Therefore, we are not persuaded that any of the cases support Miller Compressing's argument that the ordinary notice-pleading standard applies to its fraudulent transfer claims.

¶31     In *Hinrichs v. DOW Chemical Co.*, the supreme court held that "the heightened pleading standard set forth by WIS. STAT. § 802.03(2) for claims of fraud does not apply to claims made under WIS. STAT. § 100.18." *Hinrichs*, 2020 WI 2, ¶83, 389 Wis. 2d 669, 937 N.W.2d 37. Section 100.18 generally prohibits advertising that is "untrue, deceptive or misleading." WIS. STAT. § 100.18; *see also Kailin v. Armstrong*, 2002 WI App 70, ¶42, 252 Wis. 2d 676, 643 N.W.2d 132. At the outset of its analysis, the court in *Hinrichs* observed that "[a]lthough entitled 'Fraudulent representations,' the text of [§] 100.18 does not include the word 'fraud.'" *Hinrichs*, 389 Wis. 2d 669, ¶76. This observation was critical to the court's analysis because the title of a statute is not part of the statute, and the actual text of § 100.18 does not include the word "fraud." *Id.* Here, however, the text of

WIS. STAT. § 242.04(1)(a) specifically uses the word "defraud." Thus, **Hinrichs** is not helpful to Miller Compressing on this issue.

¶32    In **Springer v. Nohl Electric Products Corp.**, the supreme court held that the UFTA "does not apply to the 'fraudulent transaction' exception to the rule of successor non-liability." **Id.**, 2018 WI 48, ¶42, 381 Wis. 2d 438, 912 N.W.2d 1. Specifically, the issue was whether the "badges of fraud" contained in WIS. STAT. § 242.04 applied to the common law fraudulent transaction exception, and the court concluded that they do not. **Springer**, 381 Wis. 2d 438, ¶¶7, 42. In reaching its conclusion, the court cited the rule that statutes "must speak directly" to a common law principle in order to supplant it, and "conclude[d] that chapter 242 has not supplanted the common-law fraudulent transaction exception to the rule of successor non-liability." **Springer**, 381 Wis. 2d 438, ¶29. This case, however, does not deal with the UFTA's potential abrogation of any common law principles. No common law principles are implicated. Instead, the issue in this case requires us to determine if a particular pleading statute applies to claims brought under another substantive statute. The analysis in **Springer** is not applicable here.

¶33    Finally, in **Dalton v. Meister**, the defendant bank was sued under the Uniform Fraudulent Conveyances Act, WIS. STAT. § 242.09 (1969-70),[9] and for conspiracy. **Dalton**, 71 Wis. 2d 504, 522-23, 239 N.W.2d 9 (1976). The bank "assert[ed] that the complaint [was] simply too vague in alleging the fraudulent conveyances which underlie the conspiracy action." **Id.** at 523. However, our supreme court agreed that it was "inconceivable" that any of the defendants "would

---

[9] Although it is unclear what version of the Uniform Fraudulent Conveyances Act applied in **Dalton v. Meister**, 71 Wis. 2d 504, 239 N.W.2d 9 (1976), we observe that the relevant language of the statute remained the same during all times relevant to the case. *Compare* WIS. STAT. § 242.09 (1969-70), *with* § 242.09 (1975-76), (1973-74), and (1971-72).

find it too difficult to understand" what transactions were being challenged by the plaintiff because the relevant transactions were "set[] forth in detail" in the complaint. *See id.* Miller Compressing contends that *Dalton* is significant because the supreme court did not reference a heightened pleading requirement when analyzing the sufficiency of the statutory fraudulent conveyance claims.

¶34 *Dalton* does not help Miller Compressing. In a footnote, the supreme court observed that the then-newly created Wisconsin Rules of Civil Procedure were "not legally applicable" to the case because they were not effective until after the case commenced. *Dalton*, 71 Wis. 2d at 517 n.24. When the lawsuit in *Dalton* commenced, WIS. STAT. ch. 263 governed the sufficiency of the pleading, and it contained no heightened pleading requirement for averments of fraud. *See* WIS. STAT. ch. 263 (1969-70). The court in *Dalton* said nothing with respect to whether the plaintiff's fraudulent conveyance claims would have otherwise been subject to the heightened pleading requirement in WIS. STAT. § 802.03(2) if it had concluded that the Rules of Civil Procedure applied to the case.

¶35 Miller Compressing also relies on a number of non-Wisconsin cases interpreting other states' versions of the UFTA and concluding that the fraudulent transfer claims brought in those cases were not subject to heightened pleading requirements. *See, e.g.*, *Williams v. Leerdam*, No. ST-13-CV-449, 2015 WL 10935834 (V.I. Super. Ct. Dec. 16, 2015); *Steinberg v. Barclay's Nominees (Branches) Ltd.*, No. 04-60897-CIV, 2008 WL 4601043 (S.D. Fla. Sept. 30, 2008); *Nesco, Inc. v. Cisco*, No. Civ. A. CV205-142, 2005 WL 2493353 (S.D. Ga. Oct. 7, 2005); *Carter-Jones Lumber Co. v. Denune*, 725 N.E.2d 330 (Ohio Ct. App. 1999). These cases generally reason that statutory fraudulent transfer actions differ in significant ways from common law fraud. Additionally, many of the cases say that pleading statutory fraudulent transfer claims with particularity is more difficult

16

because the claims are asserted against a party that did not deal directly with the plaintiff, and therefore, the plaintiff generally possesses little or no information about the alleged fraudulent transfer other than it occurred. *See Steinberg*, 2008 WL 4601043 at *12. These cases also reason that the statutory scheme of the UFTA greatly abates the "fears of abusive common law fraud lawsuits which underlie" the heightened pleading requirement for averments of fraud, so applying the particularity requirement to claims brought under the UFTA is unnecessary and does not further the purpose of the heightened pleading requirement. *See Williams*, 2015 WL 10935834 at *3.

¶36 We cannot reconcile the reasoning of these cases with the plain language of WIS. STAT. § 242.04(1)(a), namely, that the transfers are alleged to have been made with actual intent to "defraud" a creditor. Nonetheless, Miller Compressing and the cases it relies on raise important points that we address in turn.

¶37 First, we recognize that state and federal courts have reached different conclusions over whether the heightened pleading requirement applies to fraudulent transfer claims brought under a state fraudulent conveyance statute. Some courts have concluded that heightened pleading does not apply to any fraudulent transfer claim under a state's UFTA,[10] while others have concluded that heightened pleading applies to all such claims,[11] and others still have reasoned that heightened pleading

---

[10] *See, e.g.*, **Williams v. Leerdam**, No. ST-13-CV-449, 2015 WL 10935834 at *3 (V.I. Super. Ct. Dec. 16, 2015); **Steinberg v. Barclay's Nominees (Branches) Ltd.**, No. 04-60897-CIV, 2008 WL 4601043 at *12 (S.D. Fla. Sept. 30, 2008); **Nesco, Inc. v. Cisco**, No. Civ. A. CV205-142, 2005 WL 2493353 at *3 (S.D. Ga. Oct. 7, 2005); **Carter-Jones Lumber Co. v. Denune**, 725 N.E.2d 330, 333 (Ohio Ct. App. 1999).

[11] *See, e.g.*, **Stoebner v. Opportunity Fin., LLC**, 909 F.3d 219, 225 n.6 (8th Cir. 2018); **General Elec. Cap. Corp. v. Lease Resol. Corp.**, 128 F.3d 1074, 1079 (7th Cir. 1997).

applies only to claims of actual fraudulent transfers but not constructive fraudulent transfers.[12] The UFTA contains "an explicit invitation … to consider the way other jurisdictions have interpreted" the UFTA, ***Beck v. BidRX, LLC***, 2018 WI App 61, ¶11, 384 Wis. 2d 207, 918 N.W.2d 96, and no interpretation of the applicable statutes is universally followed.

¶38     Second, we agree that because fraudulent transfer claims are asserted against a party that did not deal directly with the plaintiff, the plaintiff will generally possess little or no information about the alleged fraudulent transfer other than it occurred. Under these circumstances, however, courts often relax the heightened pleading requirement as opposed to not applying it at all.[13]

¶39     We agree with these cases that when certain facts necessary to state a fraudulent transfer claim are peculiarly within the defendant's knowledge, the particularity requirement may be relaxed and allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is found. ***Corder v. Antero Res. Corp.***, 57 F.4th 384,

---

[12] *See, e.g.*, ***Sauer Inc. v. Lawson***, 791 F.3d 214, 220 (1st Cir. 2015); ***Sharp Int'l Corp. v. State St. Bank and Trust Co.***, 403 F.3d 43, 56 (2d Cir. 2005); ***Larson Mfg. Co. of S.D., Inc. v. Connecticut Greenstar, Inc.***, 929 F. Supp. 2d 924, 935 (D.S.D. 2013); ***Friedman v. Wahrsager***, 848 F. Supp. 2d 278, 292 (E.D.N.Y. 2012); ***Mervyn's Holdings, LLC v. Lubert-Adler Grp. IV, LLC***, 426 B.R. 488, 495 (Bankr. D. Del. 2010); ***Air Cargo, Inc. Litig. Tr. v. i2 Techs., Inc.***, 401 B.R. 178, 192 n.7 (Bankr. D. Md. 2008); ***Tese-Milner v. TPAC, LLC***, 313 B.R. 46, 68 (Bankr. S.D.N.Y. 2004).

[13] *See* ***Corder v. Antero Res. Corp.***, 57 F.4th 384, 401-02 (4th Cir. 2023); ***Nayab v. Capital One Bank (USA), N.A.***, 942 F.3d 480, 493-94 (9th Cir. 2019); ***United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.***, 193 F.3d 304, 308 (5th Cir. 1999), *abrogated on other grounds by* ***United States ex rel. Eisenstein v. City of New York***, 556 U.S. 928 (2009); ***Emery v. American Gen. Fin., Inc.***, 134 F.3d 1321, 1323 (7th Cir. 1998); ***In re Burlington Coat Factory Sec. Litig.***, 114 F.3d 1410, 1418 (3d Cir. 1997); ***Kowal v. MCI Commc'ns Corp.***, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994); ***Scheidt v. Klein***, 956 F.2d 963, 967 (10th Cir. 1992); ***Devaney v. Chester***, 813 F.2d 566, 569 (2d Cir. 1987); *see also* ***Cattau v. National Ins. Servs. of Wis., Inc.***, No. 2016AP493, unpublished slip op., ¶44 n.14 (WI App June 13, 2018) (citing ***Emery***, 134 F.3d at 1323), *aff'd,* ***Cattau v. National Ins. Servs. of Wis., Inc.***, 2019 WI 46, 386 Wis. 2d 515, 926 N.W.2d 756.

402 (4th Cir. 2023); *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493-94 (9th Cir. 2019). This avoids "a Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery (normally of the defendant, because the essential information is in his possession and he will not reveal it voluntarily) that she could not conduct before filing the complaint." *Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998).

¶40    In sum, we conclude that claims brought under WIS. STAT. § 242.04(1)(a) premised on transfers made by a debtor with actual intent to "defraud" a creditor must be pleaded with particularity under WIS. STAT. § 802.03(2). However, when certain facts are peculiarly within the defendant's knowledge, the heightened pleading standard may be relaxed and allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is found.

### b. Miller Compressing's claims, as alleged in the Amended Complaint, were properly dismissed.

¶41    Because we determined that the heightened pleading requirements of WIS. STAT. § 802.03(2) apply to Miller Compressing's claims under WIS. STAT. § 242.04(1)(a), we now consider whether the Amended Complaint was properly dismissed. We conclude that it was.

¶42    Miller Compressing needed to plead its claims under WIS. STAT. § 242.04(1)(a) with particularity as required by WIS. STAT. § 802.03(2). In order to satisfy the heightened pleading requirement under § 802.03(2), the complaint must allege "the who, what, when, where and how" of the defendant's allegedly wrongful conduct. *Kenwood*, 239 Wis. 2d 78, ¶14 (citation omitted).

¶43 In pleading its fraudulent transfer claims under WIS. STAT. § 242.04(1)(a), Miller Compressing states only that MCC Holding made substantial payments to Defendants each year from 2012 to 2016 totaling $2,090,420 per Defendant. Miller Compressing does not allege the specifics of any of the transactions individually, by recipient, amount, date, or alleged purpose, nor does it even allege the number of transfers, even though it is clear from the record that it possessed such information. The only alleged fact that could conceivably identify a specific transfer is Miller Compressing's assertion that MCC Holding claimed that the transfers were made "under an alleged 'note' and for purported severance obligations." Alleging an unknown number of supposedly fraudulent transfers over a period of five years while asserting only collective totals is, in our view, inadequate to satisfy the particularity requirement of WIS. STAT. § 802.03(2).

¶44 Moreover, and importantly, Miller Compressing failed to adequately plead the circumstances of the fraud. To satisfy WIS. STAT. § 802.03(2)'s particularity requirement and to ensure that defendants can respond to the allegations, plaintiffs must provide some representative examples of defendants' alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors. *See United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) (concluding that a complaint that failed to specify any specific, single instance of fraud or representative examples was insufficiently pleaded under FED. R. CIV. P. 9(b)). Not every detail incident to the fraud must be pleaded, and the standard may be relaxed upon a showing of inability to obtain essential information exclusively in the defendant's control, but Miller Compressing provided virtually no facts describing the fraud other than to say that the transfers were claimed by Defendants to be justified. *See Emery*, 134 F.3d at 1323; *Foisie v. Worcester Plolytechnic Inst.*, 967 F.3d 27, 50 (1st Cir. 2020) (noting that

"Rule 9(b) does not demand a blow-by-blow account; as long as a plaintiff has adequately pleaded the who, what, where, and when of the alleged fraudulent conduct, the rule does not obligate her to allege every conceivable detail incident to the fraud").

¶45    Miller Compressing failed to plead its statutory fraudulent transfer claims with particularity under WIS. STAT. § 802.03(2). The circuit court properly dismissed them.

¶46    Miller Compressing's second claim sought an equitable accounting. In dismissing the equitable accounting claim, the circuit court concluded that Miller Compressing had an adequate remedy at law and therefore could not invoke the court's equitable jurisdiction. Miller Compressing contends that the circuit court erred because a party is not required to demonstrate that they lack an adequate remedy at law to obtain relief. We disagree.

¶47    Our supreme court's decision in *Antigo Superior Nursing Home, Inc. v. First Federal Savings & Loan Ass'n*, 51 Wis. 2d 196, 186 N.W.2d 265 (1971), is instructive. In that case, the plaintiff alleged entitlement to certain escrow money "together with all interest earned or accrued thereon, less any expenses, charges or expenditures properly offset against said account." *Id.* at 201. The complaint alleged that these funds were improperly withheld from her, and instead, a third party had received "an unknown amount of funds belonging to the plaintiffs[.]" *Id.*

¶48    The court concluded that the plaintiffs' cause of action for equitable accounting could proceed because "[o]nly an accounting can determine the proper or exact amount due and owing the respondents, if the facts are as alleged." *Id.* That is, the unknown nature of the amount due and owing to the plaintiff in *Antigo* is what supported the court's conclusion that "[t]he need for discovery ... creates the

21

reason and ground for seeking and being entitled to equity jurisdiction" and that, "[a]t the demurrer stage, the complaint adequately sets forth a cause of action for accounting[.]" *Id.* at 201-02.

¶49 Here, however, the amount due and owing to Miller Compressing by MCC Holding is known, as is the total amount of money that is alleged to have been fraudulently transferred. The driving force behind the result in *Antigo*, the unknown nature of the amount owed, is not present in this case. The circuit court properly dismissed this claim.

¶50 Third, and finally, Miller Compressing admits in its brief that its claim for injunctive relief presupposes that the UFTA claims were adequately pleaded and would survive a motion to dismiss. "A complaint stating at least one viable legal claim is required as an underlying basis for an injunction." *Gahl ex rel. Zingsheim v. Aurora Health Care, Inc.*, 2022 WI App 29, ¶30, 403 Wis. 2d 539, 977 N.W.2d 756. As we explained above, Miller Compressing's UFTA claims were not pleaded with particularity and were properly dismissed, as was Miller Compressing's claim for equitable accounting. Accordingly, the circuit court properly dismissed Miller Compressing's claim for injunctive relief.

**II.    The circuit court did not erroneously exercise its discretion when it denied Miller Compressing's post-judgment motion for leave to amend its complaint.**

¶51 Having determined that Miller Compressing's Amended Complaint was properly dismissed, we turn to whether the circuit court properly denied Miller Compressing's postjudgment motion for leave to amend the complaint. We conclude that it did.

¶52 A circuit court's decision whether to grant leave to amend a complaint is discretionary. *Finley v. Culligan*, 201 Wis. 2d 611, 626, 548 N.W.2d 854 (Ct. App. 1996). On review, we affirm a circuit court's discretionary decision "as long as the circuit court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Franke v. Franke*, 2004 WI 8, ¶54, 268 Wis. 2d 360, 674 N.W.2d 832 (cleaned up).

¶53 Miller Compressing argues that the circuit court incorrectly relied on *Mach*, 259 Wis. 2d 686, when it concluded that Miller Compressing lost the statutory presumption in favor of amendments to pleadings. We conclude that the circuit court correctly determined that Miller Compressing was not entitled to a presumption in favor of amending its complaint under WIS. STAT. § 802.09(1) because the motion was brought after judgment was entered. We further conclude that the circuit court properly exercised its discretion when it denied Miller Compressing's motion.

¶54 The Wisconsin Rules of Civil Procedure embrace a policy in favor of liberal amendment of pleadings, providing one amendment as a matter of course within certain time limitations and that thereafter "leave shall be freely given at any stage of the action when justice so requires." WIS. STAT. § 802.09(1). This language has been interpreted as a "presumption in favor of amendment" to pleadings. *Tietsworth v. Harley-Davidson, Inc.*, 2007 WI 97, ¶26, 303 Wis. 2d 94, 735 N.W.2d 418. However, this policy "does have limitations." *Id.*

¶55 In *Mach*, the plaintiff moved to amend the complaint after summary judgment was granted to the defendant. *Id.*, 259 Wis. 2d 686, ¶26. In deciding the motion, the circuit court was required to consider whether a party retains the

23

presumption in favor of amendments to pleadings after judgment is entered. ***Id.*** Looking to federal cases for guidance, the court concluded that "when a motion to amend a complaint is filed after a motion for summary judgment has been granted, there is no presumption in favor of allowing the amendment." ***Id.***, ¶27. "Rather, the party seeking leave to amend must present a reason for granting the motion that is sufficient, when considered by the [circuit] court in the sound exercise of its discretion, to overcome the value of the finality of the judgment." ***Id.***

¶56 Miller Compressing argues that ***Mach*** does not apply to extinguish the presumption in favor of amendments in this case because, unlike in ***Mach***, Miller Compressing's Amended Complaint was dismissed without prejudice upon granting a motion to dismiss as opposed to a dismissal with prejudice upon granting a motion for summary judgment. We disagree.

¶57 Miller Compressing's argument incorrectly presumes that judgments of dismissal without prejudice lack value with respect to their finality. The "finality" of a judgment without prejudice is substantively different than the "finality" of a judgment with prejudice even if both judgments are "final" for purposes of appeal under WIS. STAT. § 808.03. If a dismissal is granted without prejudice, "the defendant continues to be exposed to the risk of further litigation." ***Bishop v. Blue Cross & Blue Shield United of Wis.***, 145 Wis. 2d 315, 318, 426 N.W.2d 114 (Ct. App. 1988). "Dismissal without prejudice by definition, permits the complainant to sue again on the same cause of action." ***Jason B. v. State***, 176 Wis. 2d 400, 406, 500 N.W.2d 384 (Ct. App. 1993) (cleaned up). Dismissals with prejudice protect defendants from the risk of further litigation with respect to the dismissed claims. ***Bishop***, 145 Wis. 2d at 318.

¶58    However, it cannot be said that dismissals without prejudice lack value in "finality."  At least with respect to that particular lawsuit, the dismissed claims are resolved, and a defendant that obtains a dismissal of a complaint without prejudice might have new defenses unavailable in the first lawsuit in the event that the plaintiff sues again on the same cause of action (e.g., statutes of limitation and repose).  When a circuit court is deciding a motion to amend the pleadings after dismissing the case without prejudice, it should take into consideration whether the judgment was with or without prejudice when deciding whether the party seeking amendment has provided a reason for granting leave sufficient to overcome the value in finality of the judgment.[14]

¶59    Here, the circuit court concluded that Miller Compressing had not provided any reason for failing to bring its motion before judgment was entered.  It observed that the additional details included in the proposed Second Amended Complaint were known to Miller Compressing before it filed the original complaint, and it faulted Miller Compressing for failing to attach the proposed Second Amended Complaint when it was opposing the Defendants' motion to dismiss.  The circuit court's finding that Miller Compressing failed to provide a reason for failing to act sooner is well supported by the record, so it cannot prevail in a balancing test when it provides nothing for the court to weigh in its favor.  The circuit court "examined the relevant facts, applied a proper standard of law, and, using a

---

[14] The court in *Mach*, the cases applying *Mach*, and the federal cases cited by *Mach* all deal with dismissals with prejudice.  *E.g.*, *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 n.2 (5th Cir. 1981); *Piaskoski & Assocs. v. Ricciardi*, 2004 WI App 152, ¶5, 275 Wis. 2d 650, 686 N.W.2d 675; *see also Tietsworth v. Harley-Davidson, Inc.*, 2007 WI 97, ¶¶26-27, 303 Wis. 2d 94, 735 N.W.2d 418.  It should be no surprise, then, that these courts did not opine about the effect of a dismissal without prejudice, in particular, on the balancing test on the value of the finality of the judgment.  Although dismissals with prejudice are, in a practical sense, more "final" than dismissals without prejudice, both have value worth protecting from reasonless post-judgment motions to amend pleadings.

demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Franke*, 268 Wis. 2d 360, ¶54 (citation omitted).

## CONCLUSION

¶60    We conclude that claims under WIS. STAT. § 242.04(1)(a) based on "actual intent to ... defraud any creditor of the debtor" are required to be pleaded with particularity under WIS. STAT. § 802.03(2). This standard may be relaxed upon a showing of inability to obtain essential information exclusively in the defendant's control. Nonetheless, the claims as alleged in Miller Compressing's Amended Complaint were not pleaded with particularity and were properly dismissed along with the other claims in the Amended Complaint.

¶61    We also conclude Miller Compressing lost the statutory presumption in favor of amendments to pleadings because it brought its motion after judgment was entered against it. Although it is relevant under *Mach* whether judgment was with or without prejudice, the circuit court did not erroneously exercise its discretion when it denied Miller Compressing's motion.

*By the Court.*—Orders affirmed.

Recommended for publication in the official reports.